# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5637 | **DATE** | 9/14/2004 |
| **CASE TITLE** | EEOC vs. Caterpillar, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Defendant's Motion in Limine to Exclude Evidence Relating to a Noose Allegedly Found At a Plaintiff's Home [53-1] is granted; Defendant's Motion in Limine to Exclude Plaintiffs' Opinion Testimony and Testimony Lacking Personal Knowledge [54-1]is denied in part and reserved in part; Defendant's Motion in Limine to Exclude Evidence of Alleged Supervisor Harassment [55-1] is denied; Defendant's Motion in Limine to Exclude Evidence Related to Robert Autman, James Mack, Ronald Worley, and Terry Childress [56-1] is denied; and Defendant's Motion In Limine to Exclude Evidence Related to Persons' Sexual Orientation [57-1] is granted. Plaintiffs' motions in limine [58-1, 59-1, 60-1] are granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | number of notices 3 | | |
| ✓ | Notices mailed by judge's staff. | | | 83 |
| | Notified counsel by telephone. | date docketed | | |
| | Docketing to mail notices. | docketing deputy initials | | |
| | Mail AO 450 form. | 9/14/2004 | | |
| | Copy to judge/magistrate judge. | date mailed notice | | |
| hmb | courtroom deputy's initials | hmb mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CATERPILLAR, INC. )<br>) | |
| Defendant. ) | Case No. 03 C 5637 |
| STANLEY MCCALLUM,<br>GEORGE A. ERVINS, AND<br>RICKEY L. MCNEAL, )<br>)<br>) | Magistrate Judge Nan R. Nolan |
| ) | |
| Plaintiff-Intervenors ) | |
| ) | |
| v. ) | |
| ) | |
| CATERPILLAR, INC. )<br>) | |
| Defendant. ) | |



DOCKETED
SEP 14 2004

## MEMORANDUM OPINION AND ORDER

This case alleges that defendant Caterpillar, Inc. failed to use reasonable care to prevent and correct promptly acts of alleged racial harassment against three African-American employees at Caterpillar's Joliet, Illinois facility in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this case is set for trial on October 4, 2004. The plaintiffs and defendant filed motions in limine. Plaintiffs' motions in limine [58-1, 59-1, 60-1] are granted as unopposed. The Court addresses each of Caterpillar's motions in turn.

83

## DISCUSSION

A.    <u>Evidence Relating to a Noose Allegedly Found At Plaintiff McCallum's Home</u>

Caterpillar moves to exclude evidence relating to a noose allegedly found by plaintiff Stanley McCallum's wife in front of their home on November 25, 1999. Caterpillar argues that the alleged noose, testimony regarding the noose, and a police report filed by McCallum are irrelevant, unfairly prejudicial, lack foundation, and contain hearsay (police report). Plaintiffs argue that the noose evidence is relevant to showing that they subjectively perceived their work environment as hostile or abusive. Caterpillar's motion is granted.

The noose evidence is excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice.[1] It is unknown who left the noose at McCallum's home, and there is no connection between Caterpillar and the noose. Plaintiffs state that they will stipulate that Caterpillar is not responsible for the noose found at McCallum's home, but they clearly want the jury to infer a connection between the incident and Caterpillar. For example, plaintiffs point out that McCallum's coworkers knew where he lived.[2] The problem with this inference is that there is no evidence (other than plaintiffs' unsupported speculation) linking Caterpillar to the noose found at McCallum's home. Because "the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence," <u>Williams v.</u>

---

[1] Under Rule 403, even relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." The phrase "unfair prejudice" used in Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee of the Proposed Rules.

[2] Plaintiffs also argue that the noose found at McCallum's home is relevant to McCallum's belief that his co-workers were members of the Ku Klux Klan. Plaintiffs further state that McCallum interpreted the noose found at his home as a signal (presumably from co-workers) that McCallum's reporting to his supervisor in November 1999 of a drawing of hangman's noose around the head of a stick figure was not appreciated.

New York City Housing Authority, 154 F.Supp.2d 820, 824 (S.D. N.Y. 2001), there exists a real and substantial danger that the noose evidence could lead the jury to decide the case on an improper emotional basis without any connection between the noose and Caterpillar having been proved. Thus, even if the noose evidence is relevant to the subjective prong of the harassment test as plaintiffs suggest, the Court finds it inadmissible under Rule 403's balancing test. Caterpillar's motion in limine is granted.

B.     Plaintiffs' Opinion Testimony and Testimony Lacking Personal Knowledge

Caterpillar moves to exclude and/or limit opinion testimony as it relates to "dog whistling" incidents, "KKK" crosses, the writing of "KKK" on the paint booth wall, and plaintiffs' description of persons' alleged "malicious intent" to harass them as inadmissible under Rules 602 and 701.[3] Caterpillar's motion is denied in part and reserved in part.

1.     Dog Whistling

Plaintiffs allege that on several occasions, Caucasian coworkers and one supervisor (Bob Marx) whistled at them as if they were dogs. Plaintiffs will testify that they perceived the whistling as disrespectful and demeaning. Plaintiffs propose to offer the following evidence at trial: (1) in August 1999, Ryan Daggett dog whistled at plaintiff McNeal; (2) on February 4, 2000, Brian Smith dog whistled at plaintiff McCallum; (3) on February 8, 2000, Delmar Peel dog whistled at plaintiff McCallum; (4) on February 11, 2000, Delmar Peel dog whistled at plaintiff

_____

[3] Federal Rule of Evidence 602 states in part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Rule 701 governs questions relating to the admissibility of lay opinion and states in relevant part: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) reasonably based on the perception of the witness; [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue[.]"

Ervins; and (5) On January 31, 2001, Marx dog whistled at plaintiff McCallum. McCallum will testify that the dog whistle he experienced was different than the way Marx whistled normally.

Caterpillar argues that plaintiffs should be prohibited from referring to "dog whistling" because their claim that persons "dog whistled" at them, rather than simply "whistled," is an opinion which lacks personal knowledge. Caterpillar complains that at their depositions plaintiffs could not describe with specificity what a "dog whistle" sounded like, what it means to "dog whistle" at someone, or how they knew the intent of persons who were allegedly whistling at them.

Plaintiffs' proposed testimony meets the requirements of Rules 602 and 701. "Lay opinion testimony most often takes the form of a summary of first-hand sensory observations." United States v. Conn, 297 F.3d 548,554 (7th Cir. 2002). Plaintiffs clearly have adequate first-hand knowledge regarding the alleged whistling incidents. Plaintiffs' characterization of the whistling as "dog whistling" is based on their own personal perceptions and observations. Plaintiffs were participants in these whistling incidents and can testify as to how they perceived the whistling. United States v. Estrada, 39 F.3d 772, 773 (7th Cir. 1994) (holding participant in a conversation permitted to testify as to his understanding of their communications); United States v. Kozinski, 16 F.3d 795, 809 (7th Cir. 1994) (holding participant in conversations had personal knowledge of his own mental processes and was competent to testify regarding them). Testimony as to the plaintiffs' perception of the whistling incidents is also helpful to the jury's determination of whether plaintiffs' work environment was objectively and subjectively hostile.

Plaintiffs' apparent inability to specify what a "dog whistle" sounded like, what it means to "dog whistle" at someone, or how they knew the intent of persons who were allegedly whistling at them goes to the weight to be accorded that testimony rather than to its admissibility.

Caterpillar is free to cross-examine plaintiffs about the basis for their opinions and may offer evidence to contradict or impeach plaintiffs' lay opinions. United States v. Allen, 10 F.3d 405, 414 (7th Cir. 1993) (stating "Rule 701 places great reliance on a party's ability to cross-examine an opponent's witness and present any weaknesses in the witness's testimony to the trier of fact."). While the Court agrees with Caterpillar that plaintiffs must lay a proper foundation for their "dog whistling" testimony, it is premature to determine whether a proper foundation for admission of lay opinions under Rule 701 has been established prior to trial. Caterpillar's foundation objection is denied without prejudice to reassertion at trial if necessary.

      2.     "KKK" Crosses

Caterpillar moves to exclude plaintiffs' testimony that unidentified persons drew "KKK" crosses and crossed paint hooks to resemble a "KKK" cross as impermissible opinion testimony because it lacks personal knowledge. Caterpillar argues that plaintiffs' "KKK" cross opinion testimony lacks personal knowledge because in their depositions, plaintiffs could not explain or describe the alleged difference between a "KKK" cross and a holy cross. Caterpillar also contends that plaintiffs lack personal knowledge of the intent of the persons who drew the alleged "KKK" crosses and crossed the paint hooks in a manner to resemble "KKK." Caterpillar further argues that any reference to "KKK" crosses is unduly prejudicial because it implies that the drawings were explicitly associated with a known racist organization.

Plaintiffs' response memorandum describes a "Klan cross" as a cross with the arms tilted upwards from horizontal to look like a "Y" or rotated "K." Plaintiffs state that the evidence at trial will establish that they have personal knowledge of what a KKK cross is. Plaintiffs' trial memorandum indicates that during the investigation of a November 1999 etching on the paint booth wall in Building C of a gallows with a hangman's noose around the head of a stick figure,

plaintiff McCallum reported that he had previously seen KKK crosses drawn in the paint booth. Plaintiffs also state that in late 1999, they sent a copy of an article regarding hate groups that appeared in the Chicago Tribune as well as a picture of a "Klan cross" to Tamara Holman, Caterpillar's EEO Manager. McCallum will also testify that in February, 2001, he observed three paint hooks crossed and he interpreted them to be a KKK cross.

Plaintiff McCallum has personal knowledge of the "KKK" crosses based upon his own first-hand observation. McCallum's testimony regarding the "KKK" crosses is helpful to a determination of whether McCallum was subjected to a racially hostile work environment and Caterpillar's notice of the alleged conduct. McCallum's apparent inability to explain or describe the alleged difference between a "KKK" cross and holy cross or any other cross or lack of personal knowledge of the intent of persons who drew the alleged "KKK" crosses and crossed the paint hooks in a manner to resemble "KKK" is the proper subject of cross-examination and impeachment. Any prejudicial impact from the plaintiffs' reference to "KKK" crosses does not substantially outweigh its probative value, as required by Rule 403. Again, Caterpillar's foundation objections will be deferred until trial.[4]

3.  Drawing of "KKK" in the Paint Booth

Caterpillar next argues that plaintiffs should be prohibited from referring to an alleged incident of KKK writing on the paint booth wall pursuant to Fed. R. Evid. 403, 602, and 701. Plaintiff McCallum intends to testify that on February 11, 2002, he observed the writing of one "K" on the paint booth wall and he complained to supervisor Robert McGee that half of the letters KKK were written on the paint booth wall. Plaintiff McCallum will testify that he interpreted

_____

[4] It is unclear from the current record whether plaintiffs Ervins and McNeal intend to offer testimony regarding KKK crosses and if so, the content of such testimony. The Court will clarify this ambiguity at the final pretrial conference.

half the letters KKK as racially offensive. Caterpillar argues that plaintiffs should be prohibited from testifying that someone wrote "KKK" on the paint booth wall because they do not know who wrote the "K" and one "K" does not necessarily signal that the unknown person intended to write the letters "KKK."

Plaintiff McCallum may properly give his lay opinion regarding the alleged "K" on the paint booth wall based on his personal knowledge. McCallum's opinion is based on first-hand knowledge and observation and is helpful to the determination of whether he was subjected to a racially hostile work environment and relevant to Caterpillar's notice of the alleged conduct. Caterpillar may point out on cross-examination that McCallum does not know who wrote the alleged "K" and that one "K" does not necessarily signal that the person intended to write the letters "KKK." Caterpillar may also offer the testimony of Bob McGee that the alleged "K" looked as if it might have formed inadvertently as a result of paint dripping from a paint gun. The probative value of plaintiffs' testimony that they interpreted an alleged "K" McCallum observed on the paint booth wall as racially offensive is not substantially outweighed by the danger of any unfair prejudice. Caterpillar may raise its foundation objections at trial.[5]

4.    "Malicious Intent"

Finally, Caterpillar contends that plaintiffs should be prohibited from referring to known and unknown persons' intent because such references lack personal knowledge and amount to unfounded opinion testimony. Specifically, Caterpillar seeks an order barring plaintiffs from testifying, as they did in their depositions, that persons allegedly harbored "malicious intent" to harass them. Caterpillar's reply focuses on unknown persons' alleged "malicious intent."

---

[5] The scope of any testimony by plaintiffs Ervins and McNeal regarding the alleged "K" written on the paint booth wall is unclear and will be addressed at the pretrial conference.

Caterpillar argues that where plaintiffs are unable to identify the person in question and when that person is not available for cross-examination at trial, plaintiffs should be precluded from offering opinion testimony about that person's alleged intent.

Lay opinions regarding a third person's mental state are neither conclusively nor presumptively inadmissible. United States v. Guzzino, 810 F.2d 687, 699 (7th Cir. 1981) (holding that "lay opinion testimony as to the mental state of another is indeed competent under [Rule 701].").  Rather, in determining the admissibility of such testimony, the trial court should apply the criteria set forth in Rule 701.  Id.  "The testimony must be within the personal knowledge of the witness and 'helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue.'"  Id.  Plaintiffs state that they used the term "malicious intent" in their depositions as "an inartful expression of their belief that the ongoing conduct they were subjected to was hostile," but plaintiffs fail to specify the exact content and context of any proposed testimony regarding "malicious intent." Pls' Memo. at 5.  Given the current record, the court is unable to determine whether the evidence in question should be excluded.  The Court will address this issue at the final pretrial conference.

C.    Evidence of Alleged Supervisor Harassment

Caterpillar moves to bar evidence of alleged supervisor harassment because it is outside the scope of plaintiffs' EEOC charges and is irrelevant.  Caterpillar alternatively contends that the scope of the complaints in this action limit plaintiffs' evidence to a single supervisor's actions. Caterpillar's motion is denied.

The scope of the charge rule does not prevent the EEOC from pursuing claims of supervisor harassment based on race.  As a general rule, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." Cheek v. Western & Southern Life Ins.

Co., 31 F.3d 497, 500 (7th Cir. 1994). The Seventh Circuit has allowed claims in a private plaintiff's complaint that are 'like or reasonably related' to the EEOC charges and that reasonably can be expected to grow out of an EEOC investigation of the charges. Harper v. Godfrey Co., 45 F.3d 143, 148 (7th Cir. 1995). To meet this standard, the Seventh Circuit requires, at a minimum, that the charge and the complaint describe the same conduct and implicate the same individuals. McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 481 (7th Cir. 1996) (quoting Cheek, 31 F.3d at 501).

However, the exhaustion requirement which applies to private litigants does not apply to the EEOC. E.E.O.C. v. Fifth Third Bank, 2004 WL 422673, *2 (N.D. Ill. March 5, 2004) (Kennelly, J.). The EEOC is required to investigate charges of discrimination and must attempt conciliation with the employer prior to bringing a lawsuit under Title VII. Id. "The initial charge serves essentially as the starting point for a reasonable investigation into the surrounding facts. If the EEOC, during that investigation, uncovers discriminatory conduct not identified in the original charge, it may include that conduct in a civil suit against the employer." Id; see also EEOC v. United Parcel Service, 94 F.3d 314, 318 (7th Cir. 1996) (stating that the EEOC "may, to the extent warranted by an investigation reasonably related in scope to the allegations of the underlying charge, seek relief on behalf of individuals beyond the charging parties who are identified during the investigation."); EEOC v. Harvey L. Walner & Associates, 91 F.3d 963, 968 (7th Cir. 1996) (noting that the "EEOC may allege in a complaint whatever unlawful conduct it has uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint.").

On December 3, 1999, plaintiff McCallum filed a charge of discrimination with the EEOC. On December 7, 1999, plaintiffs Ervins and McNeal filed charges of discrimination with

the EEOC. Plaintiffs did not allege supervisor harassment in their charges. The three charges state in relevant part: "Since February 1999 white co-workers have harassed Black co-workers by painting on the walls of our work station symbols which represent the ku klux clan, skinheads and other white supremacist groups." In this lawsuit, plaintiffs are alleging that both management and coworkers created a hostile work environment. Plaintiff Ervins alleges that he was harassed in November, 1999 when supervisor Tom Perkins removed his baseball cap. Plaintiff McCallum alleges that supervisor Bob Marx harassed him by whistling at him in January and November, 2001. Plaintiff McNeal alleges that in March, 2002 supervisor Bob McGee harassed him by talking to him in a belittling manner at a meeting about McNeal's attendance and later falsely accused McNeal of threatening to bring a gun to the work site.

Evidence related to plaintiffs' allegations of supervisor harassment is admissible at trial because there is a reasonable nexus between the allegations of co-worker racial harassment contained in plaintiffs' charges and the plaintiffs' allegations of supervisor racial harassment. See EEOC v. Kim and Ted, Inc., 1996 WL 48581 (N.D. Ill. Feb. 2, 1996) (denying defendants' motion in limine seeking to bar evidence relating to sexual harassment by non-management personnel as beyond the scope of the administrative action where underlying charge of discrimination alleged only sexual harassment by the defendant's manager). It is also reasonable to assume that the EEOC's investigation of plaintiffs' charges would grow into an investigation of racial harassment based on supervisor conduct. In fact, plaintiffs state that during the investigation, the EEOC learned that supervisor Perkins had allegedly snatched a cap from plaintiff Ervins' head. Furthermore, the EEOC actually investigated plaintiff McCallum's claims of supervisor harassment, and Caterpillar was thus on notice that supervisor harassment was an issue. Plaintiffs explain that the EEOC sent Caterpillar's counsel a letter dated November 20,

-10-

2002 referring to plaintiff McCallum's claim that supervisor Marx whistled at him, and Caterpillar's counsel responded on January 24, 2003. Moreover, the EEOC's Determination Letters to Caterpillar regarding the charges of plaintiffs McCallum, Ervins, and McNeal all stated that the evidence obtained in the investigations had established reasonable cause to believe that a class of African American employees were subject to racial harassment. The Determination Letters referred to harassment in general, not just co-worker harassment, and the EEOC invited Caterpillar to participate in conciliation efforts.

Caterpillar also argues that to the extent that evidence of supervisor harassment is permitted, it should be limited to a single supervisor's, instead of multiple supervisors', actions as stated in the EEOC and Intervening plaintiffs' complaints. Caterpillar contends, without citation to authority, that evidence related to more than one supervisor should be barred as outside the scope of the complaints filed in this action. Caterpillar's argument is rejected.

The federal courts require only notice pleading and an employment discrimination claim is not a matter which must be stated with particularity under the Federal Rules of Civil Procedure. Rule 8(a) only requires a short and plain statement that will provide the defendant with fair notice of plaintiff's claim. Mason v. Southern Illinois University, 233 F.3d 1036, 1043 (7th Cir. 2000). Plaintiffs need not allege facts supporting every element of their legal theory. Hann v. The Paul Revere Life Ins. Co., 2004 WL 557380, at *2 (N.D. Ill. Feb. 17, 2004). The complaints in this case refer to harassment by co-workers and "a" supervisor. Caterpillar was given fair notice that plaintiffs were claiming supervisor harassment. Moreover, Caterpillar has not been prejudiced by plaintiffs' failure to explicitly plead harassment by supervisors. Caterpillar deposed the three individual plaintiffs, and they testified about alleged harassment by supervisors.

-11-

Finally, Caterpillar argues that plaintiffs' allegations of supervisor harassment should be excluded from admission at trial because it is not racial in nature and thus, is not relevant to plaintiffs' racial harassment claims. Caterpillar's objection is overruled. Evidence need not be overtly racial to support a racial harassment claim. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir. 1999) (underscoring that alleged harasser's "conduct need not have been explicitly sexual or racial to create a hostile environment . . . ."). Rather, plaintiffs need to show that they were harassed because of their race. The complained of conduct must have a racial character or purpose to support a Title VII claim. Id.

Plaintiff McCallum alleges that Bob Marx whistled at him in January and November, 2001 because of his race. Plaintiffs intend to prove that Marx did not whistle at Caucasian employees in a similar manner. Plaintiffs also intend to show at trial that Marx suggested that Delmar Peel, a Caucasian employee, contrive a false explanation for having whistled at plaintiff Ervins because of his race. Plaintiff Ervins alleges that Tom Perkins snatched his hat from his head because of his race and plans to show that Perkins did not snatch a hat from the head of any Caucasian employee. Plaintiff McNeal aims to show that in March, 2002, Bob McGee talked to him in a belittling manner and made a false accusation against him because of his race. As Judge Conlon observed in her order denying summary judgment, Caterpillar's protestations regarding plaintiffs' non-overtly racial evidence fails to consider context. Plaintiffs' evidence of harassment which is not overtly racial must be considered as part of the totality of circumstances in determining whether a hostile environment existed. The Court cannot find as a matter of law that these alleged incidents of supervisor behavior fail to make it more or less probable, when viewed in context, that plaintiffs were subjected to a hostile work environment.

D.    Evidence Related to Robert Autman, James Mack, Ronald Worley, and Terry Childress

Caterpillar's final motion in limine seeks to exclude evidence related to Robert Autman, James Mack, Ronald Worley, and Terry Childress on the grounds of relevance and prejudice. Caterpillar also argues that such evidence should be barred because it was not identified during discovery. Caterpillar alternatively argues that evidence related to Autman, Mack, Worley, and Childress should be limited to what plaintiffs "learned" of according to their affidavits. Caterpillar's motion is denied.

Plaintiffs listed Autman, Mack, Worley, and Childress on their trial witness list and identified several trial exhibits involving these individuals. Caterpillar complains that Autman, Mack, Worley, and Childress were not identified in the EEOC's and Intervening Plaintiffs' Rule 26(a) disclosures and were not identified in Plaintiffs' depositions as persons who might have knowledge in support of their claims.

Rule 26(a)(1)(A) requires parties to provide other parties with "the name, and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . ." Under Federal Rule of Civil Procedure 37(1)(a), witnesses that have not been disclosed cannot testify at trial unless the failure was either justified or harmless.  Rule 37(c) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . .  any witness . . . . not so disclosed."  Fed. R. Civ. P. 37(c)(1).  The sanction of exclusion is automatic unless the sanctioned party can show that its violation of Rule 26(a)(1) was either justified or harmless. NutraSweet Co. v. X-L Eng'g Co, 227 F.3d 776, 786 (7th Cir. 2000).  The following factors guide the trial court's determination of whether exclusion is appropriate:  (1) the prejudice or

-13-

surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. David v. Caterpillar, 324 F.3d 851, 857 (7th Cir. 2003).

On September 19, 2003, Judge Conlon ordered that Rule 26(a)(1) disclosures were due by October 20, 2003. No Rule 26(a) violation occurred with respect to Autman and Mack. The EEOC's October 17, 2003 Rule 26(a)(1) Disclosures listed Autman and Mack as persons having knowledge of racial harassment. The EEOC did not disclose Worley and Childress as persons having knowledge of racial harassment until March 30, 2004, after the close of discovery and the dispositive motion and pretrial order due dates. See EEOC's Amended Rule 26(a)(1) Disclosures.

Plaintiffs propose to call Worley to testify that in March 1999, he found a hangman's noose in his work area in Caterpillar's Building C along with a note and watermelon seeds. Worley will testify that he advised supervisor Mike Vondrasek of the incident. Vondrasek apparently failed to advise Caterpillar's Human Relations Department or his supervisors about the incident. According to plaintiffs, Worley told plaintiff McNeal about this incident soon after he complained about it and told plaintiffs Ervins and McCallum about it in about March 2000. Childress will testify that in May 2003, Adam Wampler, a Caucasian supervisor, called Childress "boy." Childress allegedly complained to Caterpillar, but Wampler was not disciplined. Childress apparently told plaintiff Ervins about this incident in May 2003.

Exclusion of Worley's and Childress' testimony is not required under Rule 37 as a sanction for plaintiffs' failure to timely identify Worley and Childress as having information supportive of plaintiffs' claims. Plaintiffs have not established that the failure to timely disclose

-14-

Worley and Childress was justified. The only justification offered by plaintiffs for failing to meet their disclosure obligation is that [a]ll parties to this case were kept busy by Judge Conlon's tight schedule for trial of the case." Pls' Resp. at 10. This is not a substantial justification for failing to disclose witnesses. The blame for plaintiffs' failure to disclose Worley and Childress cannot be attributed to Judge Conlon.

Plaintiffs argue that their failure to timely disclose Worley and Childress as persons with knowledge of racial harassment is harmless because: Caterpillar learned in March, 1999 of Worley's complaint about the noose; Caterpillar learned in May, 2003 about Childress' complaint that a Caucasian co-worker called him boy; Caterpillar investigated Worley's complaint in 2001 and Childress' complaint shortly after it occurred; Worley filed a charge of discrimination with the EEOC and Caterpillar responded; and Caterpillar deposed Worley in the lawsuit that he filed. Plaintiffs also contend that Caterpillar will suffer no harm from their failure to timely disclose Worley and Childress because they are willing to produce plaintiffs for depositions before trial regarding their assertions that they learned of harassment directed at Worley and Childress. Caterpillar does not dispute that it knew Worley and Childress had knowledge relevant to allegations of racial harassment. There has also been no showing that the EEOC's counsel or plaintiffs' counsel acted in bad faith.

This case is ready for trial and time for further discovery is slight.[6] However, because this Court strongly agrees with the Seventh Circuit's warning that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits," Musser v. Gentiva Health Services, 356 F.3d 751, 759 (7th Cir. 2004), the Court declines to exclude the testimony of Worley and Childress at trial. Instead, it will permit late depositions of the intervening plaintiffs on their

[6] This case is set for trial on October 4, 2004, and the trial date will not be rescheduled.

assertions that they learned of harassment directed at Worley and Childress as well as the depositions of Worley and Childress.[7] This renders the plaintiffs' violation harmless. In addition, the Court imposes the lesser sanction of requiring the EEOC and plaintiffs' counsel to be responsible for the reasonable attorneys' fees (including reasonable preparation time) and costs incurred by Caterpillar in taking these late depositions pursuant to Fed. R. Civ. P. 26(g)(3).

Caterpillar also argues that plaintiffs never mentioned a single incident involving Autman, Mack, Worley, or Childress in their depositions. Plaintiffs admit that they first disclosed their knowledge of harassment directed at Autman, Childress, Mack, and Worley in affidavits plaintiffs filed in support of their February 20, 2004 motion for partial summary judgment but claim that Caterpillar's deposition questions were ambiguous and did not make it clear that the deponents were expected to testify regarding harassment directed at other African-American employees. Plaintiffs state that they were not asked whether they had heard of harassment directed at other employees. The Court has not been provided with a copy of the deposition transcripts and thus, cannot determine whether the depositing questioning was "designed to draw out every incident which plaintiffs intended to rely on in support of their claims," as Caterpillar contends. Cat. Motion at 3. In any event, any alleged contradiction between plaintiffs' deposition testimony, affidavits, and testimony at trial is the proper subject of cross-examination and impeachment.[8]

---

[7] Fairness dictates that Caterpillar also be allowed to depose Worley and Childress, if it desires. For instance, Caterpillar states that Worley has already testified that he never told plaintiffs McCallum, McNeal or Ervins about the alleged noose incident or any other incident that he believes supports his racial harassment claim.

[8] Moreover, some of Caterpillar's failure to learn of plaintiffs' intent to rely on the allegations of Autman, Mack, Worley, and Childress to support their claims can be attributed to Caterpillar. Caterpillar apparently did not directly ask plaintiffs during their depositions whether they had heard of harassment directed at other employees. Caterpillar also did not serve interrogatories requesting a description of the facts supporting plaintiffs' claims of racial harassment as well as the witnesses with knowledge of the facts supporting plaintiffs' claims.

Finally, testimony and exhibits regarding alleged racial harassment suffered by Autman, Mack, Worley, and Childress is relevant and not unfairly prejudicial to Caterpillar. Plaintiffs' knowledge of the alleged incidents of harassment directed at other non-plaintiff African-American employees contributed to the allegedly hostile environment to which plaintiffs were subjected. Gleason v. Mesirow Fin. Inc., 118 F.3d 1134, 1144 (7th Cir. 1997) (stating that "the impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at plaintiff" but recognizing that "[s]uch incidents—directed at others and not the plaintiff—do have some relevance in demonstrating the existence of a hostile work environment."). Caterpillar's knowledge of alleged harassment directed at Worley, Mack, and Childress is also relevant to trier of fact's assessment of the reasonableness of Caterpillar's response to later and earlier instances of allegedly race-based harassment. Plaintiffs further state that Autman will confirm that it was a noose (and not a lasso as Caterpillar's employees Joe Butera and Jamie Klock apparently claimed) that Mack found in 1999.

Any prejudice of admitting evidence related to what plaintiffs and Caterpillar learned of involving Autman, Mack, Worley, and Childress does not substantially outweigh its probative value.[9] What plaintiffs learned from these four individuals is not "marginally relevant," as

---

[9] Caterpillar also objects to the admission into evidence at trial of the nooses allegedly found by Mack and Worley at Caterpillar's facility. Caterpillar argues that the nooses should not be admitted because they were not identified or produced to Caterpillar, but Caterpillar did not issue interrogatories in this case and did not ask plaintiffs to produce them. Moreover, it is undisputed that Caterpillar's employee, Tamara Holman, took possession of the noose that Mack found. Also, Worley's counsel advised Caterpillar's counsel that he could examine the noose that Worley found in counsel's office. Caterpillar further argues that plaintiffs should not be allowed to admit the nooses allegedly found by Mack and Worley at trial because plaintiffs did not see the nooses at the time, nor have they since seen the nooses. Caterpillar states that the sight of the noose is calculated to inflame the jury and encourage a verdict based on emotion and sympathy. Plaintiffs' Response does not specifically address the admission of these two nooses. The Court will address the admission of the nooses allegedly found by Mack and Worley at Caterpillar at the final pretrial conference.

Caterpillar suggests. Worley and Mack found nooses, "one of the most repugnant of all racist symbols," in their work areas. Admission of plaintiffs' knowledge of these alleged nooses and other incidents of "second-hand harassment" will not distract the jury from evaluating plaintiffs' work environment because plaintiffs' knowledge of these incidents contributed to the hostile environment to which they were allegedly subjected. The Court is also confident that the jury will be able to consider the evidence as it relates to each individual plaintiff and keep track of when, and if, each plaintiff learned of the incidents of "second-hand harassment."

Caterpillar contends that evidence related to Autman, Mack, Worley, and Childress should be limited to what plaintiffs "learned" of and how "learning" of those allegations affected their work environment. Caterpillar's proposed limitation is too narrow because it ignores the fact that Caterpillar's knowledge of the Autman, Mack, Worley, and Childress incidents is also relevant to the adequacy of Caterpillar's response to alleged incidents of racial harassment. Caterpillar is concerned that allowing direct testimony from these four individuals "will permit Mack and Worley to try their racial harassment cases twice and would provide Autman and Childress the opportunity to try their cases when such opportunity is otherwise unavailable."[10] The Court is similarly concerned about the potential for testimony by Autman, Mack, Worley, and Childress regarding incidents they experienced to devolve into a collateral trial over their own claims of racial harassment. The precise scope of any testimony by Autman, Mack, Worley, and Childress will be discussed at the final pretrial conference.

Caterpillar's request that plaintiffs' testimony of what they "learned" of be limited to the specific allegations listed in their affidavits is denied. Any testimony that deviates from

---

[10] Autman, Mack, and Worley filed charges of discrimination with the EEOC, but the EEOC did not bring suit on their behalf. Autman and Mack attempted to intervene in this action, but Judge Conlon denied that request. On November 10, 2003, Mack and Worley filed their own respective lawsuits against Caterpillar alleging that they were racially harassed in violation of Title VII.

plaintiffs' affidavits can adequately be addressed on cross-examination. Hearsay and foundation objections will be addressed at trial.

E.    Incidents Involving the Words "Fag" and "Gay"

Caterpillar moves to exclude evidence regarding two alleged incidents involving the word "fag" and one incident involving the word "gay" as irrelevant and unduly prejudicial to Caterpillar. Caterpillar's motion is granted.

Plaintiffs seek to admit the following evidence at trial: (1) in Spring 1999, an unknown person wrote the word "fag" on plaintiff McNeal's tuition reimbursement form which he kept in his work area; (2) in July 1999, an unknown person wrote "fag" on a copy of plaintiff McNeal's son's birth certificate; and (3) in December 2002, plaintiff Ervins observed a cardboard sign on which an unknown person wrote "Cat Gay House." Plaintiffs contend that these incidents are evidence of racial harassment because they were directed at African-American employees and not Caucasian employees and they occurred in the same time frame as explicitly racial conduct. It is undisputed that there is no evidence as to who was responsible for these three incidents.

Although it is a close call, the Court concludes that evidence of the three anti-gay epithets allegedly aimed at two of the plaintiffs by unknown persons in 1999 and 2002 is not relevant to plaintiffs' racial harassment claims. Plaintiffs must show that the homophobic comments had a racial character or purpose. Hardin, 167 F.3d at 345. The circumstances surrounding these homophobic comments do not make it more or less probable that plaintiffs were harassed because of their race. It is unknown who is responsible for these homophobic epithets, and the words "fag" and "gay" are obviously racially neutral. Plaintiffs have not explained how they will establish that these acts were racially motivated without knowing who was responsible. Allen v. Bake-Line Products, Inc., 2001 WL 1249054, at 10 (N.D. Ill. Oct. 17, 2001) (holding without

-19-

knowing the identity of wrongdoer(s) who allegedly sprayed something on plaintiff on two occasions and tampered with plaintiff's Maalox, plaintiff was unable to show that the acts were racially motivated). Plaintiffs offer nothing other than the fact that they are African-American and the timing of the incidents to suggest that the homophobic comments were motivated by their race. This connection to race is so remote that the Court concludes that the homophobic comments are not probative of racial harassment.

Alternatively, the Court concludes that even if the three anti-gay comments are marginally relevant to assessing the totality of the circumstances, they are inadmissible under Rule 403. The Court is mindful of the danger of carving up discrete incidents of a hostile work environment claim, divorcing them from their context, and thereby robbing instances of their cumulative effect and full force, but hostile behavior by co-workers is simply not actionable as racial harassment if it is not based on race. Berry v. Delta Airlines, Inc., 260 F.3d 803, 810-11 (7th Cir. 2001). There exists a real danger here that the mere presence of explicitly anti-gay comments may be so offensive to the jury that their attention will be diverted away from the real issue of whether the acts were racially motivated.

## CONCLUSION

For the reasons stated above, Defendant's Motion in Limine to Exclude Evidence Relating to a Noose Allegedly Found At a Plaintiff's Home [53-1] is granted; Defendant's Motion in Limine to Exclude Plaintiffs' Opinion Testimony and Testimony Lacking Personal Knowledge [54-1]is denied in part and reserved in part; Defendant's Motion in Limine to Exclude Evidence of Alleged Supervisor Harassment [55-1] is denied; Defendant's Motion in Limine to Exclude Evidence Related to Robert Autman, James Mack, Ronald Worley, and Terry Childress [56-1] is

denied; and Defendant's Motion In Limine to Exclude Evidence Related to Persons' Sexual Orientation [57-1] is granted. Plaintiffs' motions in limine [58-1, 59-1, 60-1] are granted.

**E N T E R:**

Nan R. Nolan

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated:** 9 - 14 - 04